UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MAX LINN FOR GOVERNOR CAMPAIGN,
a Florida Registered Political Campaign,
and MAX LINN, in his individual capacity,

        Plaintiffs,

vs.                             Case No. 8:06-CV-2005-T-27TBM

MEDIA GENERAL OPERATIONS, INC.,
a Delaware Corporation d/b/a WFLA,
CHANNEL 8,

        Defendant.
_____/

## ORDER

**BEFORE THE COURT** is Plaintiffs' Emergency Motion for Temporary Injunction (Dkt. 3). The Court conducted a hearing on October 30, 2006, at 5:30 p.m.[1] Upon consideration, the Motion (Dkt. 3) is **GRANTED**.

In support of the requested relief, Plaintiffs filed two affidavits and multiple exhibits. (Dkt. 2). Notwithstanding the Plaintiffs' offered proof in support of the relief requested, Defendant filed no affidavits contesting or contradicting those filed by Plaintiffs. Defendant did file an unsworn response to the motion, with attached exhibits. After considering the record, affidavits and proof

---

[1] Plaintiffs filed this case in state court on Friday, October 27, 2006. A hearing on Plaintiffs' Motion for Temporary Injunction was scheduled to be heard by the state court judge at 2:00 p.m. on Monday, October 30th. Defendant removed the case to federal court before the hearing could be conducted. The case was assigned to the undersigned, who had four previously scheduled criminal sentencings on the afternoon calendar beginning at 1:30 p.m. Accordingly, at approximately 5:30 p.m., after the previously scheduled hearings had concluded, the Court conducted a hearing on the motion. Before the hearing commenced, Plaintiffs filed a new lawsuit against Defendant in state court, resulting in the same motion being considered by the state and federal courts. During the hearing, counsel announced that the state court judge had denied Plaintiffs' motion without a hearing and without explanation.

1

Dockets.Justia.com

filed by Plaintiffs, and hearing oral argument, the Court granted Plaintiffs' motion, conditioned on the filing of a $10.00 cash bond, which Plaintiffs posted immediately. This Order serves to memorialize that oral ruling announced at the conclusion of the hearing.

### *Background*

Plaintiff Max Linn ("Linn") is a Reform Party candidate for the office of Governor of the State of Florida who has qualified to run for Governor and will be listed on the ballot in next week's gubernatorial race in Florida. Plaintiff Max Linn for Governor Campaign, a Florida registered political campaign, is Linn's campaign organization. Defendant, Media General Operations, Inc., d/b/a WFLA, Channel 8 ("WFLA"), is a Delaware corporation. WFLA is the sponsor of the last televised political debate between the candidates for Governor for the state of Florida. As of the hearing, WFLA had included only the Republican and Democratic candidates in the debate. The debate was scheduled for October 30, 2006, at 7:00 p.m.

In the weeks leading to the scheduled debate, Plaintiff Linn requested to be included in WFLA's debate. According to Elizabeth McCallum, Campaign Communications Director for Plaintiffs, when she contacted WFLA on September 26, 2006 to inquire about the requirements for Linn's inclusion in the debate, Nancy Ryan, WFLA's Special Projects Producer in charge of producing the debate, "offered that WFLA-TV would include Mr. Linn in its gubernatorial debate scheduled for October 30, 2006 if we could show WFLA-TV a statewide poll showing that Mr. Linn had at least 7% support." (Dkt.2, McCallum Aff., Exh. F). Indeed, the e-mails between the parties' attorneys which followed discuss not whether the debate would be limited to the Republican and Democratic candidates but whether Linn met WFLA's criteria for participating in the debate. In an October 25th e-mail to Plaintiffs' counsel, Defendant's attorney outlined the clear and unambiguous

criteria Linn needed to meet to participate in the debate:

> To participate in the October 30th debate, a candidate must receive at least 7% support among likely voters in an independent poll. Mr. Linn polls at nowhere near 7%. If Mr. Linn contends that he does satisfy the 7% criteria in an independent poll, please let us know. We ask that you provide us with those written polling results. Otherwise, Mr. Linn is not invited to participate in the debate."

(*See* Dkt. 2, Ex. D).

In response, Linn's campaign commissioned National Business Communications, Inc. ("NBC") to conduct a telephonic poll on October 26th at a cost of $2,500.00. (Dkt. 2, McCallum Aff., Ex. F). The results of the poll, based on responses from 611 individuals, were furnished to WFLA's counsel. (Dkt. 2, McCallum Aff., Ex. F, Ex. 1). Notwithstanding that the poll results showed an 8.7% support rating for Linn, WFLA refused to approve Linn's participation in the debate.

On October 27, 2006, Plaintiffs filed suit in the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, and an Emergency Motion for Temporary Injunction requesting that the court order specific performance of the agreement. (Dkts. 2, 3). Plaintiffs' Amended Complaint alleged counts for denial of equal protection under the Fourteenth Amendment to the United States Constitution and Article I, Section 2, of the Florida Constitution, denial of due process under the Fifth and Fourteenth Amendments to the United States Constitution, and deprivation of Plaintiffs' First Amendment rights. (Dkt. 2). Plaintiffs alleged that Defendant represented that Linn would be permitted to participate in the October 30, 2006, debate if Linn could provide a poll showing a 7% voter support rating for Linn. Plaintiffs alleged that Defendant continued to refuse to permit Linn to participate in the debate despite production of the poll satisfying that criteria.

Defendant responded, in part, that Plaintiffs could not succeed in establishing a likelihood

of success on the merits of their Amended Complaint because Defendant is not a state actor and Defendant utilized its editorial discretion in selecting which candidates could participate in the debate. (Dkt. 4). Before the October 30th 2:00 p.m. hearing scheduled in state court could be conducted, Defendant removed the case to federal court based on federal question jurisdiction pursuant to 28 U.S.C. § 1331. (Dkt. 1). Plaintiffs did not object to the removal. After removal, Plaintiffs amended the complaint, dropping their federal constitutional claims and asserting a single state law equitable estoppel claim.[2] (Dkt. 5).

### *Standard*

A temporary restraining order, like a preliminary injunction, is intended to protect against irreparable injury and preserve the district court's power to render a meaningful decision on the merits. *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). A district court may grant a preliminary injunction only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004); *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001). A preliminary injunction is "an

---

[2] Although neither party challenged the federal court's subject matter jurisdiction, this Court conducted a review of its jurisdiction *sua sponte*. *See Wisconsin Dept. of Corr. v. Schact*, 524 U.S. 381, 389 (1998). It is apparent, as both parties concede, that this Court had federal question jurisdiction when the case was removed, as all of Plaintiffs' claims alleged violations of the United States Constitution. *See* 28 U.S.C. § 1331. Notwithstanding Plaintiffs' post-removal amendment of the complaint which removed any federal constitutional claims, this Court's subject matter jurisdiction was not divested. *See Behlen v. Merrill Lynch*, 311 F.3d 1087, 1095 (11th Cir. 2002)(district court "had discretion to retain jurisdiction over the state law claims" even after plaintiff amended the complaint to remove any federal cause of action).

extraordinary and drastic remedy" and is "not to be granted unless the movant 'clearly established the burden of persuasion' as to the four prerequisites." *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir.1983) (*quoting Canal Auth. of State of Fla.*, 489 F.2d at 573).

The first of the four prerequisites to temporary injunctive relief is generally the most important. *Gonzalez v. Reno*, No. 00-11424-D, 2000 WL 381901 at *1 (11th Cir. April 19, 2000). A substantial likelihood of success on the merits requires a showing of only *likely* or probable, rather than *certain*, success. *Home Oil Co., Inc. v. Sam's East, Inc.*, 199 F. Supp. 2d 1236, 1249 (M.D. Ala. 2002) (emphasis in original). "[W]here the 'balance of the equities weighs heavily in favor of granting the [injunction], 'the movant need only show a 'substantial case on the merits.'" *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir.1986) (*citing Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981)).

## *Discussion*

In support of their motion, Plaintiffs submitted evidence establishing Defendant's offer to allow Linn to participate in the debate, provided he satisfied certain criteria. The October 25, 2006, e-mail from Defendant's attorney acknowledges receipt of Plaintiffs' attorney's demand that Linn be included in the October 30th debate. (*See* Dkt. 2, Ex. D). Defendant's attorney represented that to participate in the October 30th debate, Mr. Linn would need to provide written polling results evidencing a 7% support rating. (Id.)

On October 26, 2006, Plaintiffs' attorney sent Defendant's attorney an e-mail stating that "Google shows that Mr. Linn has been mentioned on 409 blogs" and Linn's campaign had received a 50% increase in website hits per day and a large increase in incoming calls since the last polling of support for the candidates. (Dkt. 2, Ex. E). Defendant's attorney responded that the blog and the

5

campaign survey information did not meet the criteria for the debate and stated "[i]f you want to provide an independent poll of likely voters, I can pass that on for consideration." (Id.)

In her affidavit, Elizabeth McCallum avers that she solicited prices from pollsters and that NBC informed McCallum that it could conduct a random scientific telephone poll for a price of $2,500.00. (Dkt. 2, Ex. F). According to McCallum, "NBC took a random scientific phone poll of Floridians on October 26, 2006, which showed that if the election were held at that time 8.7% of the poll's respondents would vote for Mr. Linn." On October 27, 2006, Plaintiffs' attorney furnished the poll results to Defendant's attorney, describing "the independent poll results from National showing that Max Linn has support of 8.7% of likely voters." (Dkt. 2, Ex. E, F). Defendant's attorney informed Plaintiffs' attorney that Linn would not be permitted to participate in the gubernatorial debate despite the poll results. (Id.).

During argument, Defendant explained that Linn failed to meet the participation criteria because Plaintiffs paid for the NBC poll and, therefore, it was not an "independent poll." While acknowledging that its attorney's e-mail containing the participation criteria did not elaborate on what would constitute an "independent poll," Defendant argued that Plaintiffs had misinterpreted what was meant by an "independent poll." Defendant contended alternatively that a statistical analysis of the NBC poll results would not support Linn's 8.7% support rating. However, Defendant offered no affidavits supporting that argument and no evidence supporting its argument that the NBC poll was not an "independent" poll. Plaintiffs' proof that Linn met the participation criteria for inclusion in the debate was, therefore, uncontradicted.

Based on the record before the Court, Plaintiffs established a likelihood of success on the merits of their claim of estoppel. In Florida, the elements of promissory estoppel are: (1) a promise

which the promisor should reasonably expect to induce action on the part of the promisee; (2) which induces such action; and (3) injustice can be avoided only by enforcement of the promise.[3] *W.R. Grace and Co. v. Geodata Servs., Inc.*, 547 So. 2d 919, 924 (Fla. 1989). The promise must be definite, of a substantial nature, and established by clear and convincing evidence. *Id.* at 920.

Here, the e-mails from Defendant are clear and convincing evidence of a definite promise of a substantial nature. The promise was definite in its terms. Linn could participate in the debate if he provided an independent poll showing a voter support rating of 7%. *See Manuel v. City of Jacksonville (In re Blunt)*, 210 B.R. 626, 632 (Bankr. M.D. Fla. 1997). The promise was substantial in nature. The debate was the last scheduled televised debate before the November 7, 2006, election. The promise did, in fact, induce Plaintiffs to spend $2,500.00 to commission NBC to conduct a telephonic poll. The poll results, uncontradicted by evidence or proof, show an 8.7% voter support rating for Linn. The poll results were provided to Defendant. Simply put, for purposes of Plaintiffs' Emergency Motion for Temporary Injunction, the record established that Plaintiffs met the participation criteria established by Defendant. Contrary to Defendant's promise that Linn could participate in the debate if he met that criteria, Defendant refused to allow him to participate. Given the nature of the debate, and considering that it was being conducted on the eve of the gubernatorial election in Florida, any injustice occasioned by Defendant's reneging on its promise to include Linn can only be avoided by enforcing that promise and directing Defendant to include Linn in the October 30, 2006, debate.

---

[3]While Plaintiffs titled count I of their Second Amended Complaint, Equitable Estoppel, Plaintiffs pleaded a claim for promissory estoppel. Plaintiffs alleged, "the actions of the Defendant were relied on by the Plaintiffs' [*sic*] to their detriment, and the failure of the Plaintiff to participate in the subject debates would cause irreparable harm, losing out on the benefit of the bargain and acting in reliance on defendant's representations." (Dkt. 5). Promissory estoppel is a "qualified form of equitable estoppel which applies to representations relating to a future act of the promisor rather than to an existing fact." *Crown Life Insur. Co. v. McBride*, 517 So. 2d 660, 661-62 (Fla. 1988).

Irreparable injury is evident if Linn is not permitted to publicly express his political views and contrast them with his Republican and Democratic counterparts on the air on the eve of the election.[4] Linn is a qualified gubernatorial candidate whose name will appear on the November 7th official ballot. The harm occasioned to his campaign by exclusion from the debate is immeasurable and therefore irreparable. The threatened injury to Linn, loss of the opportunity to share his platform with the voters of Florida in a televised debate, outweighs any harm the injunction could cause Defendant. Indeed, the Court can envision little damage, if any, that Defendant would suffer by Linn's participation in the debate. Requiring Defendant to provide a third podium and microphone for the debate and to implement any necessary format modifications are unquestionably outweighed by the harm that would be caused to Linn and his campaign for Governor by his exclusion from the debate.

Commendably, by sponsoring the debate, WFLA is providing the voting public with an opportunity to be more informed by witnessing the public exchange of political ideas between gubernatorial candidates in what might be considered the most important political race on the November 7th ballot. Adding a third party candidate to the debate, who was effectively invited to

---

[4] Notwithstanding, Linn's estoppel claim does not turn on whether his First Amendment rights are implicated. *Chandler v. Ga. Pub. Telecomm. Comm'n*, 917 F.2d 486, 489 (11th Cir. 1990)(First Amendment does not necessarily grant political candidates the right to be included in candidate debates.).

Likewise, Defendant's First Amendment broadcasting discretion will not be infringed upon by entry of an injunction requiring it to allow Linn to participate. It was Defendant who established the criteria for Linn's participation in the debate and who effectively promised him that he could participate if he met that criteria. Defendant did not, therefore, restrict the participants to the Republican and Democratic candidates, as was its prerogative. *See id.*, 917 F.2d at 489 (decision to invite only Republican and Democratic candidates to participate in televised debate was necessarily content-based but not viewpoint restrictive because public broadcasting company believed debate would be of the most interest and benefit to citizens, promoted its function, was "reasonable" and was "not an effort to suppress expression merely because public officials oppose the speaker's views.").

join the debate if he met WFLA's criteria, would seem to further inform the voting public. It cannot be said, therefore, that requiring Defendant to fulfill its promise and allow Linn to participate would be adverse to the public interest.

Considering that little if any damage will be caused to WFLA by including Linn in the debate and considering Linn's right to engage in political speech as a legitimate candidate for Governor, the injunction is conditioned on Plaintiffs posting a nominal cash bond of $10.00.

Accordingly, it is

**ORDERED AND ADJUDGED** that Plaintiffs' Emergency Motion for Temporary Injunction (Dkt. 3) is **GRANTED.** Defendant shall allow Linn to participate in the October 30, 2006, televised debate.

**DONE AND ORDERED** in chambers *nunc pro tunc* this 1st day of November, 2006, to October 30, 2006.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record